UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PHUC V. BUI (A-Number: 027-997-878),

Petitioner,

v.

WARDEN, GOLDEN STATE ANNEX
DETENTION FACILITY,

Respondent.

Case No.  1:26-cv-3993-DC-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Phuc V. Bui, a citizen of Vietnam, has been a legal permanent United States resident since September 24, 1987.  He was detained by ICE in January 2026, upon his return from a trip abroad.  Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner has been a legal permanent resident ("LPR") of the United States since September 25, 1987, when he arrived as an 18-year-old refugee from Vietnam.  ECF No. 1 at 20; ECF No. 7-1 at 4.  He has a valid permanent resident card.  ECF No. 1 at 20.  Petitioner's Form I-213 indicates that he had an immigration hearing on January 28, 2008, where he received some kind of relief.  *Id.*  Similarly, his FBI rap sheet indicates that removal proceedings were initiated in 2007 and dismissed in 2008.  ECF No. 7-1 at 8.

1

On January 21, 2026, when he was returning from a trip abroad, petitioner was detained by the Department of Homeland Security at the airport point of entry. ECF No. 7-1 at 4. The examining immigration officer "determined that Petitioner was not clearly and beyond a doubt entitled to be admitted because his criminal convictions rendered him inadmissible." ECF No. 7 at 2. The notice to appear, issued on January 26, 2026, lists prior misdemeanor convictions sustained between 2000 and 2015 that ICE alleges are crimes of moral turpitude or controlled substance offenses rendering petitioner inadmissible. ECF No. 7-1 at 4. Petitioner has been in ICE custody since January 2026 without any opportunity for a bond hearing. ECF No. 1 at 2.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his detention without a bond hearing violates due process. ECF No. 1 at 10, 16-17. Respondent counters that petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2). ECF No. 7 at 2. I address respondent's argument before turning to petitioner's due process claim.

Section 1225(b)(2) provides that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). Petitioner's Notice to Appear charges him as inadmissible on two separate grounds under 8 U.S.C. § 1182(a)(2)(A)(i). ECF No. 7-1 at 4-5.

2

First, ICE asserted that petitioner has been convicted of "a crime involving moral turpitude." *Id.* at 4. Second, ICE charged petitioner with having been convicted of a crime "relating to a controlled substance." *Id.* at 5. However, the Notice to Appear does not identify which crimes allegedly render petitioner inadmissible; instead, it provides a summary of petitioner's criminal history—consisting only of misdemeanors—before asserting that he is inadmissible. *See id.* at 4.

Notably, in its answer to the petition, respondent offers no argument supporting either of these charges. *See* ECF No. 7 at 2. Indeed, respondent does not reference the underlying charges—a crime involving moral turpitude and a crime relating to a controlled substance—and it instead asserts that because the examining immigration officer determined that petitioner's "criminal convictions rendered him inadmissible," petitioner's detention is "statutorily mandated." *See id.*

What is more, as petitioner points out, "[t]he government provides no judgments, charging documents, plea transcripts, or other reliable records establishing [petitioner's] actual offense of conviction." *See* ECF No. 10 at 4. Instead, respondent has provided petitioner's RAP sheet without any explanation as to how his misdemeanor convictions render him inadmissible under section 1182(a)(2)(A)(i).[1] *See* ECF No. 7-1 at 6-40. Petitioner argues that none of his misdemeanor convictions render him inadmissible. ECF No. 10 at 4-6.

Respondent has failed to establish that petitioner is subject to mandatory detention under section 1225(b)(2). Respondent offers no other argument in response to the petition. *See* ECF No. 7 at 1-2. I therefore turn to petitioner's uncontested due process claim.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

---

[1] As petitioner recognizes, the RAP sheet also does not corroborate "the NTA in key respects—for example, it does not identify cocaine for the 2014 'under the influence' conviction nor methamphetamine for the 2015 possession conviction." *See* ECF No. 10 at 4 (citing ECF No. 7-1 at 32-33, 35-36).

3

The parties agree that petitioner came to the United States in September 1987 as an 18-year-old refugee and was granted legal permanent residency.  ECF No. 1 at 20; ECF No. 7 at 1.  Thus, it is undisputed that petitioner has lived in the United States as an LPR for nearly forty years.  Courts in this Circuit, including this one, have held that an LPR has a protected liberty interest in not being detained by ICE.  *See Burton v. Larose*, No. 3:26-cv-2627-JES-BJW, 2026 WL 1256875, at *2-3 (S.D. Cal. May 7, 2026); *B.R. v. Warden*, No. 1:26-cv-0810-TLN-CSK, 2026 WL 1091489, at *2 (E.D. Cal. Apr. 22, 2026); *Amezcua v. Noem*, No. 5:26-cv-1070-SRM-AGR, 2026 WL 1048212, at *6 (C.D. Cal. Mar. 25, 2026); *Galvan Maldonado v. Andrews*, No. 1:26-cv-1451-DJC-JDP, 2026 WL 1864622 (E.D. Cal. June 29, 2026).

Courts have come to these conclusions based on the breadth of case law finding that LPRs have protected liberty interests in maintaining ties with their community and remaining free from governmental restraint.  *See Amezcua*, 2026 WL 1048212, at *6 (collecting cases).  For example, the Supreme Court has held that LPR status "carries several important privileges: he may remain in the United States indefinitely; he is free to work in this country; he may return to this country after a temporary absence abroad; and he has the privilege of establishing a permanent residence in the United States."  *Saxbe v. Bustos*, 419 U.S. 65, 72 (1974).  Notably, LPRs "do not lose their due process protections and liberty interest merely because they are subject to removal."  *Amezcua*, 2026 WL 1048212.  On the contrary, LPRs are "lawfully present in the United States until a final deportation or removal order is entered."  *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010).

I agree with other courts that have addressed this issue and find that petitioner has a protected liberty interest that accrued over his almost forty years of legal permanent residency in the United States.[2]  Respondent does not argue to the contrary.  *See* ECF No. 7.

Once a court has found that a noncitizen has a liberty interest in continued release, the

_____

[2] In addition, it appears that ICE arrested petitioner in 2007 in connection with removal proceedings that were ultimately dismissed.  ECF No. 1 at 20; ECF No. 7-1 at 8.  This prior release from immigration custody would also have given rise to a protected liberty interest.  *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest.  This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

> The *Mathews* test requires courts to consider:
>> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his freedom.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the four decades since he was admitted to the United States as an LPR.  *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high.  Prior to giving petitioner permission to live and work in the United States as an LPR, respondent determined that he presented neither a danger to the community nor a risk of flight.  Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's detention was not pursuant to a valid state interest.  *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the

5

petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's detention; more generally, it gives the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondent has not provided any information about the additional burden it would bear as a result of being required to provide a bond hearing. *See* ECF No. 7.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release or, alternatively, a bond hearing. ECF No. 1 at 17. Respondent does not address the issue. *See* ECF No. 7. Although petitioner has been convicted of several misdemeanors, they range from 11 to 26 years old. ECF No. 7-1 at 4. It appears from petitioner's rap sheet that, in 2007 to 2008, ICE tried and failed to remove petitioner for the 2000 misdemeanor. ECF No. 7-1 at 8. Petitioner was stopped by immigration authorities when he flew back from a trip abroad and presented his immigration documents at the airport. Respondent does not argue that petitioner is a flight risk or a danger.

ECF No. 7.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, there is no evidence, nor has respondent presented any argument, suggesting that there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. Petitioner was at the airport coming home from a trip abroad when ICE issued him a notice to appear and detained him. The most recent misdemeanor conviction alleged in the Notice to Appear dates from 2015, over ten years prior to his detention in January 2026. ECF No. 7-1 at 4.

Under these circumstances, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

Accordingly, I recommend that petitioner be released.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 027-997-878) from its custody.  Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing.  If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence.  This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Golden State Annex Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    July 10, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

8